**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| JAMES HOFT and TGP COMMUNICATIONS, LLC d/b/a *The Gateway Pundit*,<br><br>    Plaintiffs,<br><br>  v.<br><br>WILLIAM CHARLES BUNDREN,<br>and<br>BUNDREN LAW GROUP, PLLC<br><br>    Defendants. | Cause No. 4:23-CV-01304<br><br>Unfair Trade Practices;<br>Missouri Merchandising Practice Act;<br>Unjust Enrichment;<br>Constructive Trust & Disgorgement;<br>Tortious Interference;<br>Breach of Fiduciary Duty;<br>Legal Malpractice;<br>Declaratory Judgment |

## FIRST AMENDED COMPLAINT

### INTRODUCTION

This is an action by James Hoft and TGP Communications, LLC d/b/a *The Gateway Pundit* (collectively "TGP") against their (technically *current*) counsel for fraud, breach of fiduciary duty, and breach of contract, among other things.  Defendants (collectively referred to as "Bundren Defendants") engaged in a campaign of fraudulent billing in order to plunder their client's diminishing insurance policy.  When the Bundren Defendants got caught doing this, TGP filed this action seeking declaratory and other relief because of the Bundren Defendants' malfeasance.  Bundren then doubled down on his unethical actions by breaching his fiduciary duty in a shocking sequence of unethical events.

In a state court action (in which Bundren is still counsel of record), TGP was able to settle the matter, in part using insurance policy proceeds.  However, Bundren wanted to be paid first – for bills that were fraudulent.  It is not that TGP takes the position that Bundren should never be paid if he is found to be innocent of the claims of fraud, and other related claims.  But, Bundren

most certainly lacks the right to try to stop TGP's insurer from paying indemnification funds to resolve the state court matter. If the settlement falls apart, TGP will be financially destroyed. Bundren doesn't care about that, Bundren cares about Bundren. Bundren tried to destroy his client in order to try to extort his client into settling the original complaint in this matter, in his favor.

Bundren is still, as of the date of this complaint, counsel of record for Plaintiffs in that the underlying state court action in Missouri. Bundren has taken no steps to withdraw. However, upon being served with the initial complaint in this matter (ECF No. 1), Bundren initially ignored it. Instead, despite this prior pending action, he played tactical games and forum-shopped a complaint in state court in Texas, against Hoft, TGP, Hoft's brother, and Hoft/TGP's insurance carriers. Despite knowing full well how to put his clients on notice, Bundren instead unethically and dishonorably sought a Temporary Restraining Order from a friendly local court, without any credible evidence, to lock up TGP's insurance proceeds, so that TGP would not be able to meet its payment obligations in the underlying case settlement. Bundren secretly scuttled a settlement to the detriment of his own client, the consequences of which would be complete financial ruin for his client.

Once TGP found out about that case (it still has not even been properly served) TGP removed that Texas state court matter to federal court, where Bundren appeared at a TRO hearing. At that hearing, Bundren lied to the court that he had withdrawn from the underlying matter. In fact, since he has not sought to withdraw, but has sought to destroy TGP in his quest for his fraudulent bills to be paid, TGP has been forced to take drastic action. TGP has had to file to revoke Bundren's *pro hac vice* status in that matter, to attempt to minimize damages. *See* **Exhibit A**.

After Bundren received the Texas TRO under false pretenses, TGP moved to dissolve the

TRO, and TGP was successful. *See* **Exhibit B**. Even then, Bundren was not finished taking adverse actions against TGP, which were breaches of his fiduciary and ethical duties. Bundren then lied to the Texas state court, falsely stating that the Eastern District of Texas had declared that it lacked jurisdiction. *See* **Exhibit C**. No such declaration occurred. He was desperately trying to interfere with the settlement of the Missouri matter, no matter how ruinous that could have been to his clients.

At this point, Bundren has caused significant damage to TGP through his breaches of ethics and breaches of fiduciary duties. He must be held to account for the damage he has already caused and this Honorable Court should eventually find that Bundren Defendants' fees are invalid, that they should be subject to disgorgement of the fees already paid, and they should pay full damages to TGP for his actions thus far. Finally, Bundren Defendants should be enjoined from further actions that would jeopardize TGP's settlement in the underlying Missouri State Court Action.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as a) Plaintiff TGP Communications is a Missouri limited liability company owned by a single member, Plaintiff James Hoft, a Florida citizen, rendering it a citizen of Missouri and/or Florida; b) Defendant Bundren is a citizen of Texas and is the sole member of Defendant Bundren Law (which is itself a citizen of Texas), and c) the amount in controversy is in excess of $75,000.

2.      This Court has personal jurisdiction over Defendants pursuant to RSMo § 506.500 [1] (1) &/or (2), as this action arises from Defendants' transaction of business within Missouri and/or Defendants' making of a contract within Missouri.[1]

---

[1] Plaintiffs do not allege general jurisdiction over Defendants; Plaintiffs allege specific jurisdiction over Bundren Defendants, as Bundren purposely applied for *pro hac vice* status in a Missouri state

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the matter occurred in this district.

## PARTIES

4.      Plaintiff James Hoft ("Hoft") is a natural person and a citizen of the State of Florida.

5.      Plaintiff TGP Communications, LLC d/b/a The Gateway Pundit is a Missouri limited liability company whose sole member is Plaintiff James Hoft.  It is, therefore, a citizen of the states of Missouri and/or Florida.

6.      Defendant William Charles Bundren ("Bundren") is a natural person and a citizen of the State of Texas.  Bundren is an attorney admitted to practice in the State of Texas and is admitted *pro hac vice* in *Freeman, et al. v. Hoft, et al.*, Case No. 2122-c09815-01 in the Circuit Court of the City of Saint Louis, and who has since January 24, 2024, been practicing law in Missouri per his *pro hac vice* admission.

7.      Defendant Bundren Law Group, PLLC ("Bundren Law") is a professional limited liability company organized under the laws of the State of Texas, and whose sole member is Bundren.  It is, therefore, a citizen of the State of Texas.

## GENERAL ALLEGATIONS

8.      On or about January 10, 2024, Plaintiffs and non-party Joseph Hoft retained the services of Defendants to represent them in the matter of *Freeman, et al. v. Hoft, et al,* Case No. 2122-CC-09815-01 in the Circuit Court of St. Louis City, Missouri, Twenty-Second Judicial Circuit (the "lawsuit").

---

court case, purposely caused damage to a known Missouri entity, and physically entered the state of Missouri to defraud TGP on multiple occasions.

9.     A true and correct copy of the Retainer Agreement transmitted to Plaintiffs for this purpose ("Retainer Agreement").  (ECF No. 1, Exhibit 1).

10.     Plaintiffs are covered by an insurance policy for defense and indemnity as relates to the lawsuit, with cost of defense being within, not on top of, the applicable policy limits.

11.     Thus, any amount paid to Defendants reduces the amount of money that the insurer could pay towards a settlement or judgment, if any, thereby increasing the financial exposure to Plaintiffs for such.

12.     To date, Defendants have caused invoices for time and expenses to be submitted to the insurer for payment in the approximate amount of $600,000.00.

13.     The hours submitted by Defendants on those invoices are grossly excessive.  The following evidence of improper billing practices and fraud appears from a review of Bundren's invoices:

a.     Bundren's motion for admission *pro hac vice* was filed on Jan. 15, 2024, and he was not admitted until Jan. 24, 2024.  Yet, be charged nearly $1,400 in expenses, and at least 12 hours in mostly travel time ($6,900), for a routine scheduling hearing on Jan. 17, 2024, at which he had *no role*.  Bundren had 51 pages of billing entries before his admission and 34 pages of entries before his *pro hac vice* application was filed.  Over 150 hours of billing was submitted by Defendants for alleged work prior to *pro hac vice* admission.

b.     From Nov. 6, 2023, to Jan. 31, 2024, Bundren billed 157.40 hours ($90,505.00). From Jan. 9, 2024, to Feb. 24, 2024, Bundren billed 237.60 hours ($136,620.00). From March 1, 2024, to March 30, 2024, Bundren billed 318.30 hours ($183,022.50).  If those bills are to be believed, Bundren himself worked 10.6 hours

every single day of the month of March, *including* weekends.  Had he only worked weekdays that month, it would be an unsustainable 16 hours a day.  **This is a pace in excess of a BigLaw billing record**.[2]  TGP did not see any evidence in Bundren's work product or communications indicating that he was putting in 16 hour workdays.  Nor was that remotely necessary.  These numbers indicate nothing short of fraud.  From April 1, 2024, to April 30, 2024, Bundren billed an additional 177.80 hours ($102,235.00).  In sum, that is 733.70 hours from January 9, 2024, to April 30, 2024 ($421,877.50) for Bundren alone, not including paralegal time.  There were only nine significant events during that period—in addition to the 1/17 hearing, there were depositions scheduled for 1/26, 2/13 & 22, & 3/8, hearings on 2/22 & 3/11, and remote conferences on 3/8 & 21 and 4/12.

c.      In contrast, for that same January – April period, TGP's other outside counsel, Randazza Legal Group, PLLC, billed 340.40 hours *for the entire firm* for their significant substantive work including attending depositions and writing all significant substantive motions and oppositions and handling hearings effectively as lead counsel.  Discovery responses were handled by the Randazza firm.  Deposition preparation was handled by the Randazza firm.

d.      Numerous billing entries reflect excess time.  As an example, the second entry of January 25, 2024—Bundren billed 0.2 hours to review and save a 3-line order granting *pro hac vice* admission.  Time involved downloading and saving is a task

---

[2] Kathryn Rubin, "This Biglaw Firm Set an Unfortunate Billable Hour Record," Above the Law (May 9, 2024) available at https://abovethelaw.com/2024/05/this-biglaw-firm-set-an-unfortunate-billable-hour-record/ (highlighting record of 3,792 hours billed in a year, which is a mere 316 hours billed per month).

that should have been performed by a paralegal at a lower rate. This is a mere example of the waste and churning. Bundren's bills are replete with entries where all of the work should have been done by a paralegal for downloading electronic copies of emails and documents.

e.    On December 12, 2023, Bundren billed 4.60 hours, more than a month before seeking admission, to review the Second Amended Petition and 16 exhibits, despite having spent only 1.70 no-charge hours the prior day reviewing the original petition and the insurance policy. It should not take nearly three times the effort to review the Second Amended Petition than the original. Similarly, Bundren billed 1.6 hours on February 25, 2024, and another 1.3 hours on February 26, 2024, for review and revisions to objections to two additional requests for production, adding a short standard objection that was copied across all responses.[3]

f.    In March 2024, with no actual depositions, one perfunctory hearing, and two remote special master conferences, Attorney Bundren billed 318.30 hours (average of 79.575 hours/week). On March 9, he billed 4.8 hours for legal research on a motion *that had already been filed* and which was met with very little caselaw in opposition, with another 5.3 hours on March 10. On March 17, he billed 2.2 hours for review of the draft opposition to the fifth motion to compel, with another 1.7 hours on March 18, yet the Microsoft Word metadata timestamps on the edits only evidence *14 total minutes of editing* on March 18 (and he billed 0.5 hours for the transmission email that would only have taken a 0.1 to draft). Some of his most

---

[3] Again, this is a mere glaring example, a full examination of the bills will reveal at pattern and practice of billing fraud.

excessive billing that month was with respect to 3rd party subpoenas.  On March 20 alone he spent 6.7 hours in "final preparation" of subpoenas *drafted by other counsel*, which contained overlapping language.

g.      Between April 3rd through 10th, Bundren billed 7.7 hours revising a Georgia Petition in Aid of Discovery.  The entire petition was 9 pages, with *the first 5 pages being an identification of parties*.

h.      The invoices contain numerous 0.2 entries for reviewing and downloading routine and short documents.  E.g., Attorney Bundren billed a 0.2 on Feb. 20, 2024, for reviewing an e-mail from co- counsel that said only: "Will do."

14.    TGP filed a bankruptcy petition on April 24, 2024, and Bundren indicated as much in a 0.4 call with local counsel in Georgia, directing him to cease working in light of the automatic bankruptcy stay.  Yet, Bundren then continued to churn the file, unlawfully billing 16.4 hours of from April 25-30, despite the automatic stay.  Defendants' invoices are replete with inflated and fraudulent time entries, and the above are mere illustrative examples.

15.    Rule 4-1.5(a) of the Missouri Rules of Professional Conduct requires that an attorney not charge or collect an unreasonable fee.

16.    Defendants' fraudulent invoices were the charging of an unreasonable fee.

17.    To date, Atlantic Specialty Company, One Beacon Professional Insurance Group, One Beach Professional Insurance, Inc., and Intact Insurance Group, USA, LLC (hereinafter collectively referred to as the "Insurer") have remitted approximately $90,000.00 to Defendants.

18.    To the extent Defendants have being paid by the Insurer for their fraudulent invoices, such was the collection of an unreasonable fee.

19.     Plaintiffs deny owing Defendants any obligation to make payment for their fraudulent invoices.

20.     Defendants have demanded that the fraudulent invoices be paid.

21.     On or about September 29, 2024, a settlement was reached in the underlying lawsuit (the "settlement agreement").  *See* **Exhibit D**.

22.     On or about October 7, 2024, notice was given to the St. Louis court of the settlement agreement and motion for a stay was filed in the Freeman Moss lawsuit pending performance of the settlement agreement.  *See id.*   The Freeman Moss lawsuit is still active litigation until the completion of the agreement.  *See* **Exhibit E**.

23.     Despite the instant known first-filed action pending in this Court, Defendants filed a petition and application for a Temporary Restraining Order (the "TRO") in the 471st Judicial District in Collin County, Texas on October 8, 2024, seeking to enjoin TGP's insurance funds from distributed by the Insurer for the settlement agreement.  That same day, the Texas state court issued Defendants the TRO.

24.     On or about October 9, 2024, Plaintiffs removed the TRO matter to the United States District Court for the Eastern District of Texas.

25.     In the meantime, Plaintiff TGP was going to be financially destroyed if a payment under the settlement agreement was not made on or before October 20, 2024, and Defendant Bundren had locked up enough funds that the Insurer could not make the full payment.

26.     On or about October 18, 2024, the TRO was dissolved by the United States District Court for the Eastern District of Texas.  *See* **Exhibit B**.

27.     Notably, that Court found Bundren lacked a likelihood of success on the merits of his claims, holding "If maintaining the TRO is the endzone, Bundren has not even made it to the

redzone." *Bundren L. Grp., PLLC v. Atl. Specialty Ins. Co. USA, LLC*, Civil Action No. 4:24-CV-900 (E.D. Tex. Oct. 18, 2024) (slip op. at p. 7).

28.    On or about October 19, 2024, Defendants filed a motion to remand with the United States District Court for the Eastern District of Texas, which remains pending.  Plaintiffs opposed this motion on October 21, 2024.

29.    While the motion to remand is pending in federal court, Defendants filed a fraudulent "Motion to Extend Temporary Restraining Order" in the Texas state court, purporting to seek to extend the TRO vacated by the federal court for an additional 14 days.

30.    At no time has Defendant Bundren withdrawn from representing TGP in the Freeman Moss lawsuit.  *See* **Exhibit E**.

31.    Throughout his motions, Defendant Bundren has lied to the courts both regarding the facts of this matter and regarding the findings and quotations of other courts in this matter.[4] And, he has done so with the intent and effect of harming TGP and James and Joseph Hoft.

### Count I: Unfair Trade Practices

32.    Plaintiffs restate and reallege Paragraphs 1-32 as if fully set forth herein.

33.    Tex. Bus. & Com. Code Ann. § 17.50(a)(3) provides that a consumer may maintain an action when the defendant engages in any unconscionable action or course of action that constitutes a producing cause of economic damages.

---

[4] For example, in Defendant Bundren's Motion to Extend Temporary Restraining Order, he falsely asserted to the state court that the Texas federal court found that it "lacks subject-matter jurisdiction in this Civil Action" *See* **Exhibit F** At 10 ¶ 38, despite the Texas federal court merely questioning diversity citizenship and giving TGP leave to amend its notice of removal.  *See* **Exhibit B**.

34.   "Unconscionable action or course of action" means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.  Tex. Bus. & Com. Code Ann. § 17.45(3)

35.   In causing fraudulent and excessive invoices to be submitted to the Insurer for payment and in receiving payment thereon, Defendants engaged in an unconscionable course of action.

36.   Such action was to Plaintiffs' detriment as it deprived Plaintiffs of insurance funds that could be applied to the defense and/or indemnity of the lawsuit and/or other claims.

37.   Such action took advantage of Plaintiffs' knowledge, ability, experience, and capacity, as they had to rely on Defendants for their honesty and could not, themselves, identify fraudulent and excessive invoices before such submission.  Only Defendants truly know how long each task took.

38.   Such actions were grossly unfair.

39.   As a proximate result of Defendants' unconscionable course of action, Plaintiffs suffered economic damages and incurred attorneys' fees.

**Count II: Missouri Merchandising Practice Act**
**(Brought by Plaintiff James Hoft against all Defendants)**

40.   Plaintiff James Hoft ("Hoft") restates and realleges Paragraphs 1-32 as though fully set forth herein.

41.   At and before the time of the transaction referred to in paragraph 9, Defendants practiced deception, fraud, false pretense, misrepresentation, unfair practices and concealment, omission and suppression of material facts upon Plaintiff Hoft by promising to only bill them for legitimate legal fees and expenses.

42.     As a direct and proximate result of Defendant's deception, fraud, false pretense, misrepresentation, unfair practices and concealment, Plaintiff Hoft was induced to and did retain Defendants legal services.  Plaintiff made such purchase for personal, family or household purposes.

43.     Defendants' conduct as described herein was intentional and in violation of V.A.M.S. § 407.020, and the regulations of the Attorney General of Missouri promulgated thereunder, and as a direct and proximate result of Defendants' illegal conduct, Plaintiff Hoft has suffered ascertainable loss in money in excess of $400,000.00.

44.     Plaintiff has incurred and will incur attorney's fees in prosecuting this action, for which Defendants are liable under V.A.M.S. § 407.025.

45.     In all respects as alleged above, (a) Plaintiff acted as a reasonable consumer would in light of all circumstances, and (b) the method, act, or practice unlawfully employed by defendant would cause and did in fact cause Plaintiff, as a reasonable person, to enter into the transaction that resulted in damages.

**Count III: Unjust Enrichment, Constructive Trust & Disgorgement**

46.     Plaintiffs restate and reallege Paragraphs 1-32 as if fully set forth herein.

47.     A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage.  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  A key element of unjust enrichment is that the person sought to be charged wrongly secured or passively received a benefit.  *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied).

48.     Defendants were unjustly enriched when they were paid monies from Plaintiffs' depleting insurance policy, taking undue advantage of Defendants by reducing the amounts

available under the policy for indemnification of liability. Every cent Defendants improperly received is a cent that Plaintiffs would have to pay toward any judgment or settlement of the underlying action in excess of the policy limits.

49.    By transmitting falsified bills for payment to Plaintiffs' insurer, which bills were paid in whole or in part, Defendants wrongly secured funds that otherwise would indemnify Plaintiffs.

50.    Defendants took undue advantage of their position, as the alleged services billed for were largely conducted in private, with no opportunity for Plaintiffs' oversight; Plaintiffs and their Insurer were reliant on Defendants' good faith and honesty in billing, which were lacking as set forth above.

51.    "A constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015).

52.    Defendants had a fiduciary relationship with Plaintiffs as their counsel.

53.    Defendants breached their fiduciary duties to Plaintiffs by submitting falsified bills for payment to the Insurer and receiving payment thereon.

54.    The funds Defendants wrongfully received can be traced back to the payments made by the Insurer.

55.    Thus, the Court should impose a constructive trust over the amounts by which Defendants were unjustly enriched. *KCM Fin., supra.*

56.    The Court may otherwise order equitable disgorgement by Defendants of the wrongfully received funds on account of Defendants' breach of fiduciary duty and unjust enrichment. *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 729 (Tex. 2016).

**Count IV: Tortious Interference**

57.     Plaintiffs restate and reallege Paragraphs 1-32 as if fully set forth herein.

58.     A tortious interference claim under Missouri law for tortious interference with a contract or business expectancy must meet the following elements: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification for defendant's interference; and (5) damages resulting from defendant's conduct.  *Bishop & Assocs., LLC v. Ameren Corp.*, 520 S.W.3d 463, 472 (Mo. banc 2017).

59.     Plaintiffs had a contract with the Insurer via an insurance policy covering defense and indemnity as relates to the lawsuit, with cost of defense being within, not on top of, the applicable policy limits.

60.     Defendant Bundren had knowledge of this contract as the attorney representing Plaintiffs in the lawsuit as the Retainer Agreement acknowledged the Insurer when recognizing Defendant Bundren Law Group, PLLC would be paid by Plaintiffs "for all amounts of all invoices which are not paid by Insurer."  (ECF No. 1, Exhibit 1 at 2).

61.     Defendant Bundren induced breach of the insurance policy by seeking a TRO enjoining funds by the Insurer contracted for the lawsuit, successfully locking up the funds intended for the October 20, 2024, indemnification payment under the settlement agreement.

62.     Defendant Bundren had no justification for inducing breach because Defendant Bundren had no reasonable fear of irreparable harm.  If the funds from the Insurer did not cover Defendant Bundren's legal fees and invoices, Plaintiffs would pay all invoices not paid by the Insurer, pursuant to the Retainer Agreement.

63.    Defendant Bundren also lacked justification in interfering with this action pending in this Court by filing a TRO in Texas.  Plaintiffs have the right to full adjudication of Defendant Bundren's alleged legal fees, and that adjudication is occurring in this Court in Missouri.

64.    Plaintiffs have suffered monetary damages due to having to use their own liquid assets to make the October 20, 2024 payment under the settlement agreement due to the Insurer funds being locked up by a TRO.

65.    Plaintiffs have also had to pay excess attorney fees fighting the frivolous and malicious TRO and countering Defendants' unethical actions.

66.    Plaintiffs had a contract with Ruby Freeman and Wandrea Moss via the settlement agreement reached in the lawsuit.

67.    Defendant Bundren had knowledge of this contract as the attorney representing Plaintiffs in the lawsuit which resulted in the settlement agreement.  As an attorney of record, Defendant Bundren and Defendant Bundren Law Group, PLLC received the notice of settlement when it was filed in the lawsuit's docket sheet.

68.    Defendant Bundren induced breach of the settlement agreement by seeking a TRO against Plaintiffs, locking up the funds earmarked for the settlement agreement and inhibiting the Insurer's ability to make the full payment.

69.    Defendant Bundren had no justification for seeking a TRO and inducing breach of the settlement agreement as the Retainer Agreement stated Defendant Bundren Law Group, PLLC would be paid by Plaintiffs for any invoices not paid by the Insurer.

70.    Plaintiffs have suffered monetary damages due to having to use their own liquid assets to make the October 19, 2024 payment under the settlement agreement due to the Insurer

funds being locked up by a TRO.  Plaintiffs have also had to pay excess attorney fees fighting the frivolous and malicious TRO.

## Count V: Breach of Fiduciary Duty

71.     Plaintiffs restate and reallege Paragraphs 1-32 as if fully set forth herein.

72.     A breach of fiduciary claim under Missouri law requires the plaintiff show: (1) a fiduciary relationship existed; (2) breach; (3) causation; and (4) harm.  *Int'l Envtl. Mgmt. v. United Corporate Servs.*, 858 F.3d 1121, 1125 (8th Cir. 2017).

73.     A fiduciary relationship existed between Defendants and Plaintiffs when Plaintiffs retained Defendant as their attorney, as shown by the Retainer Agreement.  (ECF No. 1, Exhibit 1).

74.     Defendant Bundren breached the duties of his fiduciary relationship by failing to withdraw from the lawsuit before seeking a frivolous and malicious TRO.

75.     Defendant Bundren breached the duties of his fiduciary relationship by violating Rule 4-1.5, 4-1.7, and 4-1.15 of the Missouri Rules of Professional Conduct.

76.     Defendant Bundren also breached the duties of his fiduciary relationship by trying to, and successfully, intimidating the Insurer into not paying Plaintiffs' claim under the insurance policy for the settlement agreement.

77.     Defendant Bundren also breached the duties of his fiduciary relationship when he acted in a grossly unethical manner in Texas to try to cause financial ruin to his client.  Enjoining the funds of the Insurer threatened the fulfillment of the settlement agreement, which would cause financial ruin to Plaintiff Hoft and Plaintiff TGP.

78.    Defendant Bundren's breach caused Plaintiffs' monetary damages as Plaintiffs had to find another way to make the October 19, 2024 payment under the settlement agreement as a direct result of Defendant Bundren's actions.

79.    Defendant Bundren's breach also caused Plaintiffs to suffer excess attorney fees and frivolous litigation to fight an unethical and improper case filed by Defendant Bundren in Texas seeking a TRO.

80.    Plaintiffs have suffered monetary damages due to having to use their own liquid assets to make the October 19, 2024 payment under the settlement agreement due to the Insurer funds being locked up by a TRO.  Plaintiffs have also had to pay excess attorney fees fighting the frivolous and malicious TRO.

### Count VI: Legal Malpractice

81.    Plaintiffs restate and reallege Paragraphs 1-32 as if fully set forth herein.

82.    A claim for legal malpractice in Missouri law must allege the existence of four elements: (1) an attorney-client relationship between the plaintiff and the defendant; (2) negligence or breach of contract by the defendant; (3) proximate causation; and (4) damages. *St. Paul Surplus Lines Ins. Co. v. Remley*, 2009 U.S. Dist. LEXIS 59434 at 4-5 (E.D. Mo. 2009).

83.    An attorney-client relationship existed between Defendants and Plaintiffs, as shown by the Retainer Agreement.  (ECF 1, Exhibit 1)  This relationship still exists as Defendant Bundren has failed to withdraw from the lawsuit.

84.    Defendant Bundren breached his attorney-client relationship when he maliciously sought a TRO enjoining Insurer funds, threatening the settlement agreement reached in the matter in which Defendant Bundren represented Plaintiffs.  This behavior reached beyond lack of acting

in his client's best interests, Defendant Bundren ardently acted in a manner that he knew would harm Plaintiffs in the matter in which they held an attorney-client relationship.

85.    Defendant Bundren's breach proximately caused Plaintiffs' monetary damages as Plaintiffs had to find another way to make the October 19, 2024 payment under the settlement agreement as a result of Defendant Bundren's actions.

86.    Defendant Bundren's breach also proximately caused Plaintiffs to suffer excess attorney fees and frivolous litigation to fight an unethical and improper case filed by Defendant Bundren in Texas seeking a TRO.

87.    Plaintiffs have suffered monetary damages due to having to use their own liquid assets to make the October 19, 2024 payment under the settlement agreement due to the Insurer funds being locked up by a TRO.  Plaintiffs have also had to pay excess attorney fees fighting the frivolous and malicious TRO.

### Count VII: Declaratory Judgment

88.    Plaintiffs restate and reallege Paragraphs 1-32 as if fully set forth herein.

89.    "A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010); *accord USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, n. 21 (Tex. 2018).

90.    Upon information and belief, Defendants did not perform pursuant to the contract as otherwise described in the fraudulent invoices.

91.    To the extent Defendants did perform, it was excessive and unreasonable, and Defendants are prohibited from charging for such performance under Rule 4-1.5(a).

92.     Nonpayment by Plaintiffs or the Insurer for non-performance and/or charges prohibited under Rule 4-1.5(a) is not a breach of contract.

93.      Nonpayment by Plaintiffs or the Insurer for non-performance and/or charges prohibited under Rule 4-1.5(a) will not cause any damage to Defendants.

94.     Nevertheless, Defendants have demanded that their fraudulent invoices for work allegedly and/or excessively performed under the Retainer Agreement be paid.

95.     Therefore, pursuant to 28 U.S.C. § 2201, Plaintiffs require a declaration that they shall not be required, as a matter of law, to pay some or all of the unpaid invoices claimed by Defendants.

## REQUEST FOR RELIEF

In light of the foregoing, Plaintiffs hereby pray this Court issue and award:

1)     A declaration that Defendants' invoices are fraudulent and excessive and that Plaintiffs are not obligated for payment thereon, whether directly or indirectly, including by Plaintiffs' Insurer;

2)     Actual and compensatory damages;

3)     Disgorgement of all fees unjustly collected by Defendants;

4)     A constructive trust over all fees unjustly collected by Defendants;

5)     Attorneys' fees and court costs per Tex. Bus. & Com. Code Ann. § 17.50(d) and V.A.M.S. § 407.025; and

6)     Such other and further relief as this Court deems mete and just.


Dated: October 28, 2024              Respectfully Submitted,


                                     /s/ John C. Burns
                                     John C. Burns (66462)

Burns Law Firm
P.O. Box 191250
St. Louis, Missouri 63119
P: (314) 329-5040
F: (314) 282-8136
john@burns-law-firm.com

*Attorneys for Plaintiff.*

**CERTIFICATE OF SERVICE**

I hereby certify the foregoing document was filed via the Court's CM/ECF system and served on all parties thereby, on the date noted above.

/s/ John C. Burns
John C. Burns (66462)