UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES HOFT and TGP COMMUNICATIONS, LLC d/b/a *The Gateway Pundit,*<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM CHARLES BUNDREN, And BUNDREN LAW GROUP, PLLC,<br><br>Defendants. | Case No. 4:24-cv-01304-HEA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs James Hoft and TGP Communications, LLC d/b/a The Gateway Pundit file their reply in support of their Motion for Preliminary Injunction.[1]

Bundren does his best to obfuscate the facts and to misstate the law in his efforts to multiply the proceedings. What is clear is this: Bundren wanted to make money from a Missouri client on a Missouri case, so he entered that Missouri case and then did his best to prolong that case. His client managed to settle that case (using in-house and separate counsel, since Bundren was an impediment to settlement). (*See* Declaration of John Burns ("Burns Decl."), ¶ 4) The settlement was to be paid, in part, using insurance proceeds from Missouri insurance policies.[2] (*See id.*, ¶ 5) Had the settlement fallen apart, the consequences to Bundren's clients would have

---

[1] For ease of reference, Plaintiffs will collectively refer to themselves as "TGP" and the Defendants as "Bundren," as there are no issues that require disambiguation.

[2] The settlement agreement requires strict confidentiality and TGP cannot readily set forth its contents or file a copy. Bundren takes the position that he is not subject to jurisdiction by Missouri courts. Given his unethical conduct to date, TGP must reasonably fear that he would break that confidentiality, and even if that could be remedied, putting the genie back in the bottle would be impossible. However, if Bundren is provided with it, there must be strong safeguards that take into account his bizarre views on the jurisdiction of the Missouri courts, and how he might act once he has it.

been financially devastating. (*See id.*)

Bundren then demanded to be paid from funds he had no lawful claim to before the settlement was paid. (*See id.*)  This was not possible.  Bundren began trying to interfere with the settlement so that he could get his way. (*See id.*, ¶ 6)  This breach of fiduciary duty was as shocking as his billing fraud.  In order to meet its settlement obligations timely, TGP was left with no choice but to file this lawsuit. (*See id.*)  Instead of filing a compulsory counterclaim here, Bundren filed a separate lawsuit so that he could try to hold that settlement performance hostage.  He knew that if his Texas gambit was successful, TGP would be ruined.  He succeeded for a few days.  In a local court, he managed to obtain a TRO that froze TGP's funds.  Fortunately, TGP was able to quickly dissolve that TRO, with the judge condemning Bundren's claims for lack of merit.  (*See* Order Dissolving TRO in the E.D. Tex, attached to the Burns Decl. as **Exhibit 1**)

Bundren now comes to this Court skating on thin ice.  Bundren knows the first-filed rule. Bundren knows that what he did was unethical. Bundren knows that his forum selection clause is permissive, but not mandatory.  Bundren knows that the instant motion is not analyzed under the *Dataphase* factors.  The first-filed rule compels that it be litigated here in Missouri.  Jurisdiction and venue are not just proper, but obvious.  The motion should be granted.

1. **The *Dataphase* Factors Are Irrelevant and *Nw. Airlines* Controls**

Bundren attempts to assert that TGP should have addressed the standards for a temporary restraining order under *Dataphase Systems, Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). This ignores controlling precedent that holds that "orders enjoining a party from proceeding with a duplicative, second-filed lawsuit in another forum, are not subject to the

*Dataphase* standards." *Nw. Airlines v. Am. Airlines*, 989 F.2d 1002, 1004 (8th Cir. 1993).[3] If there are two cases over the same issue, the court in the first-filed action has priority over the second filed action. *Id*.

Bundren tries to slip out from under *Nw. Airlines* by claiming that the first-filed case was only a declaratory judgment action. Bundren has conducted himself with a total lack of candor throughout his relationship with TGP and in his litigation, but this is a misrepresentation that simply boggles the mind, because a perfunctory review of the complaint shows that he is not being truthful. While Count I of the original complaint sought declaratory relief, Counts II-IV sought monetary relief from Bundren for unfair trade practices, violation of the Missouri Merchandising Practice Act, and unjust enrichment for his past receipt of payments on his fraudulent bills. (ECF No. 1). The amended complaint also asserts monetary claims for tortious interference, breach of fiduciary duty, and legal malpractice. (ECF No. 9).[4]

Bundren uses the term "raced to the courthouse" to attempt to distinguish *Nw. Airlines*, but he misrepresents his own actions. For starters, he claims that he sent *TGP* demand letters. (ECF No. 21 at 9) His own exhibits, which he buries in 500 pages of exhibits, show that he actually never threatened TGP with litigation. He did tell the *insurance companies* that he would

---

[3] The only *Dataphase* factor Bundren appears concerned with is "irreparable harm." Being forced to participate in multiplicative, vexatious litigation is irreparable harm. *See Laosebikan v. Coca-Cola Co.,* 415 F. App'x 211, 215 (11th Cir. 2011). The balance of the equities furthers the injunction—Bundren suffers no harm in litigating his claims in this Court. And, the public interest favors litigating here only—the Eastern District of Texas is one of the busiest and justice would be prompter here, and Missouri has a strong interest in the conduct of the attorneys who have practiced here, when their conduct in that practice is a key issue before the court.

[4] A lack of candor about even such obvious issues should inform the Court's skepticism at all of Bundren's representations. If every misrepresentation were explained, TGP could not meet the page limits in this Reply. Bundren's argument and affidavit "epitomizes the debate term 'Gish Gallop,' which describes the practice of using an excessive number of arguments to overwhelm an opponent without regard to their accuracy or strength." *Manansingh v. United States*, 2021 U.S. Dist. LEXIS 97713, at *4-5 (D. Nev. May 24, 2021).

consider non-payment to be a breach of contract. (*See* ECF No. 21-1, ¶¶ 25-34 and Exhibits 1-8 to Bundren's declaration, which are all directed at the insurance companies)

A "race to the courthouse" is when one party threatens suit against another, and the second party tries to beat the first one to the punch when there is *imminent* litigation. *Nw. Airlines*, *supra* at 1007. This is not the case when a demand gives "no indication that a lawsuit [is] imminent, nor that [the demander] was doing anything more than blowing smoke about a potential lawsuit[.]" *Id.*

If this was a "race" to the courthouse, TGP played the part of the tortoise, not the hare. Bundren began making demands on August 19. (*See* Burns Decl., ¶ 7) Bundren could have sued then. He did not. It was only after Bundren began imminently interfering with the settlement he could trigger a life-or-death situation for TGP. (*See id.*; *see also* Emergency Motion to Dissolve TRO in the E.D. Tex., attached to the Burns Decl. as **Exhibit 2**) In order to comply with the settlement, TGP was forced to file suit on September 27, 2024, here, to ensure the funds were properly directed. (*See* Burns Decl., ¶ 8) It cannot be a "race to the courthouse" where Bundren sat on his rights for weeks and did not even bother attempting to file suit until two weeks after TGP served him here. Bundren's *post hoc* claim that this constitutes a "race" is implausible.

> "Although a suit initiated immediately in response to a threat of suit may raise the question of whether the emerging plaintiff merely won a race to the courthouse, the analysis is different when negotiations are ongoing and both sides are aware that litigation could occur at any time, brought by either side. When the negotiations are long-term and ongoing and there is no false implication that a party will refrain from litigation during those negotiations, the first-filed presumption may remain intact." *Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 22-23 (D. Mass. 2000).

Bundren's "race to the courthouse" argument might have made sense if TGP filed suit in August, when Bundren first made his threat, not six weeks later, after he nearly destroyed TGP.

The only party who acted in bad faith was Bundren, who after being served with the complaint in this action, *surreptitiously* filed a duplicative lawsuit, kept that information from TGP (while still counsel of record for TGP)[5], *raced* to a local judge, did not serve TGP, and got an *ex parte* TRO to try and crush TGP by seizing its insurance funds so that it would be extorted into a quick settlement. (*See* Burns Decl., ¶ 10)  Fortunately, after removal from state to federal court, and Judge Jordan considered the evidence and the law, the TRO was dissolved.[6] (*See* **Exhibit 1**)  That Texas case is now subject to a motion to transfer venue and a motion to dismiss. (*See* Motion to Transfer Venue, Opposition to Motion to Transfer Venue, and Motion to Dismiss filed in E.D. Tex., attached to the Burns Decl. as **Exhibits 3, 4, and 5**)[7]

Bundren tries to argue that the two cases are not identical, therefore *Nw. Airlines* does not apply. But he knows that a there is no requirement for an identical lawsuit in each jurisdiction for the transfer/injunction to issue. He knows the standard since it was argued in the Eastern District of Texas as to transferring under the first-filed rule, and Bundren did not dispute it.  The standard merely requires a substantial overlap in issues and parties. *Save Power v. Syntek Fin. Corp*, 121 F.3d 947, 950 (5th Cir. 1997). Substantial overlap, as Bundren knows was argued, exists if "the core issues are the same or if much of the proof adduced would likely be identical." *Int'l Fid.*

---

[5] Bundren is *still counsel of record for TGP in the Missouri matter.*  He represented to the court in Texas that he had withdrawn. (*See* Transcript of October 11, 2024 E.D. Tex. Hearing, attached to the Burns Decl. as **Exhibit 11**) TGP has filed a motion to revoke his *pro hac vice* status, because Bundren still refuses to move to withdraw on his own. (*See* Motion to Revoke Bundren Pro Hac Vice, attached to the Burns Decl. as **Exhibit 12**)  If he would lie to his local judge, with whom he has a personal relationship, consider how credibly he would represent facts here, where he presumably will not return.

[6] Bundren has even vexatiously failed to withdraw his motion to remand, despite pleading, thereafter, that there was diversity jurisdiction, asserting the facts in support of that subject matter jurisdiction.

[7] While TGP cannot represent what the Eastern District of Texas will do with those motions, this Court should be informed by the content of the briefing, which is attached in its entirety as of the date of this filing.

*Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 677 (5th Cir. 2011) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)). It is the same standard used by this Court. *Brinker v. Kraft Heinz Foods Co.*, 2024 U.S. Dist. LEXIS 136357, at *7-8 (E.D. Mo. Aug. 1, 2024). In fact, the Eighth Circuit merely requires that a first-filed case be "parallel litigation" and these cases are undoubtedly parallel. *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 503 n.2 (8th Cir. 1999). Thus, the first-filed rule should compel enjoining Bundren from prosecuting the Texas litigation.[8]

**2.    This Court has Personal Jurisdiction over Defendants and Venue is Proper in this District**

Bundren moved to dismiss for lack of personal jurisdiction and purported improper venue (ECF No. 19) and points to that argument in opposition to the motion to enjoin his parallel litigation. This Court has personal jurisdiction over Bundren, and venue here is proper. In fact, the Court could take this opportunity to kill two birds/motions with one stone here, granting the instant motion and denying the motion to dismiss as moot.[9]

For Bundren to claim a lack of jurisdiction or an inconvenient venue is simply baffling. An attorney defendant cannot complain that a forum is an inconvenient place to litigate a malpractice action when he "**was ready and willing to litigate in this forum when he applied for admission *pro hac vice*.**" *See, e.g., Western Thrift & Loan Corp. v. Rucci*, 2012 U.S. Dist. LEXIS 41749, at *12 (D. Minn. March 27, 2012). Out-of-state counsel are subject to personal jurisdiction here even when they merely appear in Missouri to "settle their state court cases and

---

[8] It also would favor Plaintiffs' choice of forum for the matter, including Bundren's compulsory counterclaim, to be litigated here. *Compare Terra Int'l v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) ("federal courts give considerable deference to a plaintiff's choice of forum...").
[9] The Court can deny that motion without response, but TGP does not waive its right to respond to that motion if the court is not inclined to engage in such efficiency.

to secure personal compensation." *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014). "[W]hen a party 'invades a state for pecuniary gain it should be prepared to defend any suit arising out of that invasion.'" *Id.*, quoting *Precision Constr. Co. v. J.A. Slattery Co., Inc.*, 765 F.2d 114, 116 (8th Cir. 1985).

Active litigation (which was at issue in the instant case) is no less of an "invasion" than mere settlement discussions. In fact, when an attorney comes here to litigate, it is dispositive of jurisdiction or venue arguments. *See Creative Compounds, LLC v. Lott & Friedland, P.A.,* 2010 U.S. Dist. LEXIS 45244, at *8-9 (E.D. Mo. May 7, 2010) (Limbaugh, U.S.D.J.). In *Creative Compounds*, an out-of-state law firm was sued for malpractice arising out of Missouri litigation. That firm moved to dismiss, claiming that its representation was negligible or nominal and thus there was no jurisdiction. Judge Limbaugh aptly found otherwise, as lawyers for the firm "were attorneys of record for four months" and "performed enough legal work in the case to rack up some $22,000 in fees." *Id.* This was enough to give them sufficient minimum contacts in the state to satisfy the due process analysis. *See also Rucci*, *supra* at *12; *Keefe v. Kirschenbaum & Kirschenbaum PC*, 40 P.3d 1267 (Colo.2002) (en banc) (personal jurisdiction proper in Colorado over a New York law firm because lawyer "consciously entered into the agreement, with foreseeable consequences" to represent resident of Colorado). Bundren has been counsel for TGP for twice as long as Lott & Friedland was and purportedly did enough work to rack up **over 25 times** the amount of fees that Lott & Friedland billed.

Bundren contracted with a Missouri corporation, to represent it and its principals in a case pending in Missouri state court. (*See* Complaint, ¶¶ 9-10; Retainer Agreement, attached to the Burns Decl. as **Exhibit 6**) Missouri permeates the agreement, to wit:

- Reference line: Refers explicitly to the matter pending in Missouri.

- Reference further explicitly identifies client as being in Missouri.

- Page 2 refers to the representation in the Circuit Court of St. Louis City, Missouri.

- Page 2 directs Bundren to submit invoices to his clients, not the insurer.  Thus, he knew he was sending the fraudulent bills to Missouri.

- Page 2 further requires the clients to interface with the insurer to procure payment, thus he knew payment from the insurer would only come through Missouri action.

- Page 3 has a provision that he would not begin working until satisfactory events in the Missouri court occurred, thus Missouri action triggered his obligations.

- Page 4 limited the scope of representation to the Missouri litigation.

- The agreement was set up, p. 10, only for execution by TGP and the Hofts, not the insurer.[10]

Bundren was admitted *pro hac vice* in Missouri. [11] (*See Pro Hac Vice* Application, attached to the Burns Decl. as **Exhibit 8**)  He agreed to be bound by Missouri's ethical rules and to be "subject to discipline by the courts" of Missouri. (*See id.*; S.C. Rule 9.03)  He claims that he is a third party beneficiary to Missouri insurance agreements.[12] (*See* Insurance Agreements, attached to the Burns Decl. as **Exhibit 9;** Bundren Amended Complaint in E.D. Texas, attached to the Burns Decl. as **Exhibit 10,** at ¶¶ 36, 47, 108-117)  He attended and billed exorbitantly for at least

---

[10] Bundren was never retained by the insurer. (*See* Email with insurer reflecting that Bundren did not retain insurer, attached to the Burns Decl. as **Exhibit 7**).

[11] TGP has actually had to move to revoke his *pro hac vice* status, because Bundren will not move to withdraw himself.  Why is a mystery, but presumably he is concerned that yet another trip to Missouri to do so will be counted against him.

[12] TGP and the insurers disagree, but Bundren should not be permitted to claim he is a party to Missouri contracts, as he has done in Texas, then claim that these are not relevant to the evaluation of his contacts here.  "The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation." *Hossaini v. Western. Mo. Med. Ctr*., 140 F.3d 1140, 1142 (8th Cir. 1998).

four hearings in Missouri. (*See* Burns Decl., at ¶ 16) He came to Missouri for client meetings. (*See id.*) He was very at home in Missouri when it came to invading the state to bilk his clients of $600,000, which is over **twenty-five times more** than the out of state lawyers in *Creative Compounds*. Bundren inflated bills during all of his invasions. For instance, Bundren billed nearly $7,000 to attend a rote scheduling conference in Missouri, before he was even admitted *pro hac vice*, had no role at the hearing and his presence was unnecessary. (*See* Burns Decl. at ¶ 17) Being in Missouri was mighty convenient when he could bill (fraudulently) for it. Bundren now tries to downplay his involvement in the Missouri representation, but he cannot flee from the fact he was lead counsel who commandeered the entire case strategy (until he was sidelined so that settlement could occur without his efforts to multiply those proceedings for his own personal gain) and billed over $600,000 and claims to have worked approximately 1,000 hours on the case.[13] (*See* Burns Decl., ¶ 4) He cannot have it both ways.

The attorney in *Rucci* a similar position as Bundren here, and the District of Minnesota gave that position no credit. *Rucci*, 2012 U.S. Dist. LEXIS 41749 at *12. He was willing to litigate in the forum state when he applied for *pro hac vice* admission. *Id*. He did not find it inconvenient to commit to "participate in the preparation and presentation of the case" in the forum state. *Id.* And the attorney's argument that the case should be elsewhere "based on his own inconvenience is unavailing." *Id*.

It is not just unavailing, it would be judicially perverse to permit Bundren to claim that this is the wrong place to answer for his actions. As a New Mexico court held, as a "matter of public policy," out-of-state lawyers cannot be permitted to "surreptitiously practice law" in

---

[13] Bundren has attempted to claim his mission was to find evidence outside of Missouri, but he was *lead counsel*, responsible for all aspects of the Missouri litigation.

Missouri's courts and "shed accountability for such representation by claiming lack of personal jurisdiction in those very same courts." *Martinez v. Ye*, 2021 N.M. App. Unpub. LEXIS 200, at *23 (N.M. Ct. App. June 28, 2021).  Moreover, a state has an interest in the conduct of attorneys while practicing and litigating in the state. *See Gilette v. N.D. Disciplinary Bd. Counsel*, 610 F.3d 1045, 1047 (8th Cir. 2010) (holding such as a consideration in *Younger* absention).

Answering for his misdeeds in this state, may *feel* less convenient than showing up to pick up a check for committing fraud, but that is a matter of Bundren's personal feelings of inconvenience, which is not the same as legal inconvenience.

**3.      This Case Should Not be Transferred to Texas**

**3.1.    Bundren Cannot Rely upon the Retainer Agreement to Transfer**

Bundren drafted his retainer agreement, upon which he relies for its forum selection clause, but that forum selection clause does not help him. (*See* Retainer Agreement)  In pertinent part, that retainer agreement provides:

> **THIS LETTER AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, AND ALL OBLIGATIONS OF THE PARTIES ARE PERFORMABLE IN COLLIN COUNTY, TEXAS. THIS AGREEMENT CAN BE ENFORCEABLE BY ANY COURT OF COMPETENT JURISDICTION IN COLLIN COUNTY, TEXAS.**

The language, which Bundren drafted, is clear: Texas law applies to **the agreement**, and that there is **permissive** venue in Texas.  Whether we apply Texas law or 8th Circuit law, the result is the same, the forum clause is merely permissive. *See Dunne v. Libbra*, 330 F.3d 1062, 1064 (8th Cir. 2003) (finding a forum selection clause permissive when it did not contain the words "shall," "exclusive," "only," or "must"); *see also Bancorp South Bank v. Hazelwood Logistics Ctr., LLC*, 2010 U.S. Dist. LEXIS 79620, at *5-6 (E.D. Mo. Aug. 6, 2010) (Autrey, J.) (holding that "[t]hrough the use of permissive 'may,' nothing in the forum selection clause … requires

suit to be brought" in a specific court); *BancorpSouth Bank v. Hazelwood Logistics Ctr.*, LLC, 706 F.3d 888, 896 (8th Cir. 2013) (upholding same). Bundren is experienced counsel and knew exactly what he was doing when he drafted it permissively.

Here, the retainer agreement that Bundren drafted states that it "**can**" be enforceable by any court of competent jurisdiction in Collin County, Texas," not that it **must** be enforced there. (*See* Retainer Agreement, at ¶ 13 (emphasis added)). Bundren has been licensed in the State of Texas since 1979. His use of "can" instead of "must" was not accidental. Presumably, he used a permissive, rather than mandatory, jurisdiction clause because he wanted the liberty to file elsewhere, should that prove advantageous to him. TGP understood it was merely permissive when signing it. (*See* Burns Decl., ¶ 12). There was a meeting of the minds that the contract means what it obviously says. Bundren sought to maintain flexibility, and is now upset that he sharpened both sides of a blade and one side might give him a little nick.

To whatever extent Bundren may request that the court defer to Texas law, Texas law hurts his case. As Bundren should know, "under Texas law, the fixing of venue by contract is invalid." *Shamoun & Norman, LLP v. Yarto Int'l Group, LP*, 398 S.W.3d 272, 294 (Tex. Ct. App. 2012). Presumably, this is why he drafted it as permissive, not mandatory.

Texas law does not compel litigation in the named forum when such clauses are merely permissive any more than the 8th Circuit does. A forum selection clause "in which the parties merely 'consent' or 'submit' to the jurisdiction of a particular forum are permissive rather than mandatory, and a mere consent-to-jurisdiction will not justify dismissing an action that is filed in a different forum." *In re Wilmer Cutler Pickering Hale & Dorr, LLP*, 2008 Tex. App. LEXIS 9692, at *9-10 (Tex. Ct. App. Dec. 31, 2008), citing the 8th Cir in *Dunne*, 330 F.3d at 1063; *Keaty v. Freeport Indonesia, Inc.*, 503 F.3d 955, 956-57 (5th Cir. 1974). Permissive forum

selection clauses "constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction in any other forum." *Lion Fed. Credit Union v. Worldpay, LLC*, 2024 U.S. Dist. LEXIS 53865, at *7-8 (W.D. Ark. March 26, 2024), quoting *High Plains Const., Inc. v. Gay*, 831 F. Supp. 2d 1089, 1102 (S.D. Iowa 2011).

If the court interprets this clause as *mandatory*, then it will be judicially depriving TGP of its bargained for exchange a permissive clause. "Any other interpretation of this provision would render the bargained-for discretion of Plaintiff, which Plaintiff received as an inducement to acceptance of the Guaranty, hollow and meaningless." *BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC*, 2010 U.S. Dist. LEXIS 79620, at *7 (E.D. Mo. Aug. 6, 2010). TGP signed an agreement Bundren drafted, in which it is clear and unambiguous that the clause is permissive. To whatever extent it is not clear, the tie should go to TGP. "Under settled contract principles, when a forum selection clause is ambiguous, it should be construed against the drafting party. *Caldas & Sons*, 17 F.3d at 127; see *Tenneco, Inc. v. Greater Lafourche Port Comm'n*, 427 F.2d 1061, 1065 (5th Cir. 1970); *LeBlanc*, 961 F.Supp.2d at 828."

Even if Bundren had drafted a mandatory clause, it would not be applicable. The clause Bundren inserted into the retainer agreement states that "this **agreement** can be enforceable by any court of competent jurisdiction in Collin County, Texas." (Retainer Agreement at ¶ 13). Only one of Plaintiffs' claims relates to Bundren's desire to obtain fraudulent funds under the agreement. The majority of the claims either sound in tort or are based upon statute.[14] Moreover, Texas law appears to even exempt TGP's claim for declaratory relief since it is not "instituted

---

[14] Given this rule, while the Retainer Agreement does call for Texas law, that is only with regard to contract claims. Plaintiff's tort claims will be decided under Missouri law. Missouri's courts are far better equipped to decide fraud, malpractice, and unjust enrichment claims where the underlying facts occurred in Missouri litigation than a Texas court would be.

under" the agreement, but rather seeks to avoid fraud. *See, e.g., In re Wilmer Cutler Pickering Hale & Dorr*, 2008 Tex. App. 9692, at *12-13 (holding that a forum-selection clause in a contract is only applicable if the litigation is "instituted under" that contract). The retainer agreement does not permit Bundren to *demand* that this case be heard in Texas.

### 3.2. The Insurance Agreements Further Compel Jurisdiction and Venue in Missouri

Bundren argues that insurance agreements between Plaintiffs and their insurers are applicable to this dispute. In fact, Bundren insists that he is a third-party beneficiary of those agreements. (*See* Bundren Amended Complaint in E.D. Texas, at ¶¶ 36, 47, 108-117). While TGP disputes that Bundren and his firm are third-party beneficiaries to the insurance agreements,[15] Bundren vehemently claims that he is, so he is stuck with that position in this first-filed and identical-issues lawsuit. *See Hossaini v. Western Mo. Med. Ctr.*, 140 F.3d 1140, 1142 (8th Cir. 1998) ("judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation").

The insurance policy is a Missouri contract with no ties to Texas at all. It inures to the benefit of the named insured—TGP, a Missouri company. The agreement makes this very clear as it contains the following documents: a "Missouri Important Notice to Policyholders," a "Missouri Amendatory Endorsement," and "Missouri Defense Costs." (*See* Insurance Agreement) Notably the insurance policy falls within the "comprehensive statutory scheme designed to regulate the insurance industry." *Shqeir v. Equifax, Inc.*, 636 S.W.2d 944, 948 & n.5

---

[15] In the Eastern District of Texas, the court recognized this when it dissolved Bundren's temporary restraining order, holding that he was not a party to the insurance contract, that the insurers had no obligations to Bundren, and that Bundren was solely retained by TGP and its principals. (*See* Order Dissolving TRO in E.D. Texas, attached as **Exhibit 1**, at 8-9) Nevertheless, Bundren persists in this theory and is estopped from inconsistently claiming otherwise here. (*See* E.D. Tex. Amended Complaint, at ¶¶ 36, 47, 108-117)

(Mo. 1982) ("Rights and duties pertaining to virtually every aspect of insurance are minutely detailed in more than 10 chapters of the Revised Statutes. *See*, Chapter 374, et seq., RSMo. 1978.")  The insurance agreement does not mention Bundren or the State of Texas anywhere.

However, by claiming to be a third-party beneficiary under a Missouri insurance contract, governed by Missouri law and being used in Missouri state court litigation by an attorney admitted *pro hac vice* in Missouri, where he agreed to be subject to Missouri's rules of professional conduct, Bundren waived his ability to argue that this Court has no personal jurisdiction over him. *See BancorpSouth Bank*, 2010 U.S. Dist. LEXIS 79620, at *3 (holding that, in Missouri, "jurisdiction over the person may be obtained by consent or by waiver"). This case belongs in this Court. Its only relationship to Texas is that Bundren believes that its courts would be friendlier to him.

### 3.3. Missouri is Otherwise the Right Forum

Not only did Bundren subject himself and his firm to jurisdiction here, venue is proper here because the events and omissions occurred here.  28 U.S.C. § 1391(b)(2).  He appeared in Missouri on multiple occasions, physically and virtually, and caused his filings to be submitted to the Missouri courts.  Contrary to Bundren's misrepresentations, a significant number of witnesses and exhibits are located in Missouri.  TGP and Jim Hoft have records in Missouri  (*See* Burns Decl., ¶ 18; Declaration of Kellie Poen, ¶ 8; Declaration of Tammie Gassaway, ¶ 8).  The Circuit Court of St. Louis City's records are in Missouri.  Primary appearing counsel for the plaintiffs in the underlying litigation have their records in Missouri.  The records of the Special Master in the underlying litigation are in Missouri.  And, numerous witnesses are located in Missouri:  Matthew Ampleman, Edward Dowd, John Danforth, Peter Dunne, Hon. Joseph R. Whyte, and Hon. Elizabeth Hogan.  Thus, the proper forum for this dispute is in Missouri.

//

**4.     Conclusion**

The first filed lawsuit gets priority. *Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1006 (8th Cir. 1993). This is the first filed suit. Bundren has provided no good reason, and certainly no compelling reason, to disturb that balance. This Court should enjoin further action in Texas, and bring order to this dispute. It should also examine the issues in the motion to dismiss (ECF No. 19) and realize that they largely overlap with this motion and deny that without requiring TGP to waste money and time responding to it, or at least strike out as many of the issues that are clearly frivolous. Bundren has had great success in multiplying the proceedings and the billing in this matter, as a tactical maneuver. This Court should disincentivize that kind of conduct by simply declining to reward it or participate in it.

Dated: November 8, 2024                             Respectfully Submitted,

/s/ John C. Burns
John C. Burns (66462)
Burns Law Firm
P.O. Box 191250
St. Louis, Missouri 63119
P: (314) 329-5040
F: (314) 282-8136
john@burns-law-firm.com
*Attorneys for Plaintiffs*

Case No. 4:24-cv-01304-HEA

## CERTIFICATE OF SERVICE

I hereby certify that, on November 8, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ John C. Burns<br>John C. Burns