**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES HOFT and TGP COMMUNICATIONS, LLC, d/b/a/ The Gateway Pundit, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO.: 4:24-CV-01304-HEA |
| v. | ) | |
| | ) | |
| WILLIAM CHARLES BUNDREN and BUNDREN LAW GROUP, PLLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' SUR-REPLY TO PLAINTIFFS' REPLY TO DEFENDANTS'
MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

COME NOW William Charles Bundren ("Bundren") and Bundren Law Group, PLLC

("BLG") (collectively, "Defendants"), by and through counsel, and hereby submit their Sur-Reply

to Plaintiffs' Reply ("Plaintiffs' Reply") (Doc. 24) to Defendants' Memorandum of Law in

Response (Doc. 21) to Plaintiffs' Motion for Temporary Restraining Order and Preliminary

Injunction (Doc. 11) ("Plaintiffs' TRO Motion"), and state as follows:

**INTRODUCTION AND SUMMARY OF THE SUR-REPLY**

Plaintiffs' Reply sidesteps and fails to rebut the undisputed facts of this case and interjects

new red herring arguments and facts, which have no applicability to the real questions before the

Court. It is undisputed that Plaintiffs, Joseph Hoft ("Joe Hoft"),[1] and the Insurance Companies[2]

---

[1]     Joe Hoft is not a party to the instant case. Joe Hoft is, however, a defendant in the Eastern District of Texas Litigation and was also a defendant in the State Action. Joe Hoft is a resident of the State of Florida and has not joined Plaintiffs' Motion.

[2]     The Insurance Companies are not parties to instant case, but the Insurance Companies are defendants in the Eastern District of Texas Litigation. The Insurance Companies issued the Insurance Policy from Minnesota, Connecticut or Maryland, which required the Insurance Companies to pay the defense costs Invoices to BLG in Texas for BLG's defending the defendants in the Freeman Moss Litigation from Texas.

retained BLG and Bundren to represent Plaintiffs and Joe Hoft in a state court lawsuit filed in the

Circuit Court of St. Louis City, Missouri, styled *Freeman, et al. v. Hoft*, et al., Case No. 2122-CC-

09815 (the "State Action"). *See* Doc. 1, ¶¶ 9-10; Doc. 21-1, ⁋⁋ 6-34; Doc. 23-1, ⁋⁋ 10, 29-37, 46-

53; Doc. 24-1, ⁋ 4. It is undisputed that the Retainer Agreement was negotiated in Texas and

Florida with Plaintiffs and Joe Hoft, and the Insurance Companies located in Minnesota,

Connecticut, or Maryland. *Id.* While the Insurance Companies did not execute the Retainer

Agreement, the Insurance Companies approved the terms of the Retainer Agreement. Doc. 24-10.

It is undisputed that the Retainer Agreement states on its face that all work will be performed by

Defendants in Collin County, Texas. The Retainer Agreement provides, in part, in capitalized and

bold font that:

> **13. THIS LETTER AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, AND ALL OBLIGATIONS OF THE PARTIES ARE PERFORMABLE IN COLLIN COUNTY, TEXAS. THIS AGREEMENT CAN BE ENFORCEABLE BY ANY COURT OF COMPETENT JURISDICTION IN COLLIN COUNTY, TEXAS.**

 Doc. 1, ⁋⁋ 4, 9-10, 23; Doc. 9, ⁋⁋ 8-9; Doc. 23-1, ⁋⁋ 28-30.

It is undisputed that TGF maintains its principal place of business in Florida, and that the

Hofts are residents and citizens of Florida. Doc. 1, ⁋⁋ 1; Doc. 9, ⁋⁋ 1,4; Doc. 23-1, ⁋⁋ 18-23, 52-

53. It is undisputed that the Insurance Companies each maintain their principal place of business

in Minnesota, Connecticut, and Maryland, respectively. Doc. 23-1, ⁋⁋ 32-37, 41, 46-54. It is

undisputed that BLG is a Texas law firm organized pursuant to the laws of the State of Texas with

its principal and only place of business in Collin County, Texas. Doc. 1, ⁋⁋ 7-9; Doc. 9, ⁋⁋ 1, 7;

Doc. 23-1, ⁋ 26. It is undisputed that Bundren resides in Collin County, Texas, and is an attorney

licensed by the State Bar of Texas and is a resident of Texas—not Missouri. *Id.*

It is undisputed that on or about January 10, 2024, Plaintiffs and Joseph Hoft retained Defendants to provide a defense in the State Action against allegations made by Ruby Freeman ("Freeman") and Shea Moss ("Moss") against Plaintiffs and Joseph Hoft for defamation, disparagement, and personal injury, *inter alia*, caused by Plaintiffs and Joseph Hoft's alleged publication of defamatory statements about Freeman and Moss regarding conduct and actions of Freeman and Moss occurring at the State Farm Arena in Fulton County, Georgia in November 2020 with respect to the scanning and tabulation of election ballots for the November 2020 federal election. Doc. 1, ¶¶ 9, 10; Doc. 9, ¶¶ 8, 9; Doc. 23-1 at ¶¶ 10, 29-30.  It is also undisputed that Freeman and Moss are residents of Georgia, and the conduct at the center of the State Action occurred in Georgia and Florida, and other States—not Missouri. Doc. 23-1, ¶¶ 10, 24-30, 63-131.

It is undisputed that the Insurance Companies issued an Insurance Policy covering the claims asserted by Freeman and Moss in the State Action and agreed to pay defense costs from the limits of liability of the Insurance Policy. Doc. 1, ¶¶ 11-12; Doc. 9, ¶¶ at 10-11; Doc. 21-1, ¶¶ 11-34; Doc. 23-1, ¶¶ 32-37, 39-44, 46-62; Doc. 24, ¶¶ 5-6. It is undisputed that BLG was instructed to submit invoices (the "Invoices") for its defense costs and attorneys' fees to the Insurance Companies in Minnesota, Connecticut, or Maryland, and to Plaintiffs and Joe Hoft in Florida. *See* Doc. 21-1, ¶¶ 11-21; Doc. 23-1, ¶¶ 46-50, 52-62. It is undisputed that Defendants provided the legal services described in the Retainer Agreement in Texas, Georgia, and other States. Doc. 23-1, ¶¶ 63-131.  It is undisputed that BLG prepared the Invoices in Texas and delivered the Invoices as instructed from Texas to the Insurance Companies in Minnesota, Connecticut, or Maryland, and to Plaintiffs and Joe Hoft in Florida. Doc. 23-1, ¶¶ 34-36, 49-50, 55-62.

It is undisputed that on September 27, 2024, Plaintiffs filed their Original Complaint (Doc. 1) against Defendants *only after receiving* and in direct response to numerous written demands by

3

BLG to the Insurance Companies in Minnesota, Connecticut, and Maryland, beginning on August 19, 2024 for payment of the past due Invoices for defense costs incurred in the State Action. Doc. 24-1, ¶¶ 6-8; Doc. 21-1, ¶¶ 13-34. It is undisputed that the impetus for Plaintiffs' filing of the Original Complaint was the receipt of written demands from BLG for payment of the past due Invoices to the Insurance Companies in Minnesota, Connecticut, and Maryland— copies of which were sent to Plaintiffs and Joe Hoft in Florida. *Id.* It is undisputed that Plaintiffs' Original Complaint complained of and disputed the amount of attorney's fees and costs expended by BLG during the course of Defendants' representation of Plaintiffs and Joe Hoft in the State Action. Doc. 1, ¶¶ 13-25. The Invoices were based on legal services performed by BLG in Texas and other States. It is undisputed that Defendants prepared the Invoices in Texas and delivered same to the Insurance Companies in Minnesota, Connecticut, and Maryland, and to Plaintiffs and Joe Hoft in Florida. Doc. 23-1, ¶¶ 55-62. It is undisputed that but for BLG's written demands to the Insurance Companies for payment of the past due Invoices—which would effectively reduce the limit of liability of the Insurance Policy—Plaintiffs would not have filed the Original Complaint in this Court. Doc. 24-1, ¶¶ 5-8.

It is undisputed that Plaintiffs' First Amended Complaint (Doc. 9) *filed on October 28, 2024*, complains of a lawsuit filed by BLG in Texas twenty (20) days earlier on *October 8, 2024*. Doc. 9, ¶¶ 23-28, Doc. 24-1, ¶¶ 9-11. It is undisputed that the First Amended Complaint was filed specifically and directly in response to the *October 8, 2024* Texas State Court lawsuit filed by BLG in the 471st Judicial District Court of Collin County, Texas and the *October 8, 2024* Temporary Restraining Order issued by the 471st Judicial District Court of Collin County, Texas against the Insurance Companies. Doc. 24-1, ¶¶ 9-11.

Plaintiffs' Reply completely ignores the undisputed facts, many of which are taken from

4

Plaintiffs' own pleadings (Doc. 1 and Doc. 9) and the Declaration of John Burns (Doc. 24-1). Instead, Plaintiffs introduce red herrings by suggesting that an independent "bookkeeper" (Doc. 24-3) and "accountant" (Doc. 24-2) whose "task for TGP is to reconcile its accounts on a monthly basis" "possess[es] records" concerning this "lawsuit." What records? How are those records relevant to the Invoices prepared and submitted by BLG? How are those records "relevant" to any issue here before the Court? TGP provides no such explanation.

The Burns' Declaration (Doc. 24-1)—other than complaining of BLG's multiple demands to the Insurance Companies in Minnesota, Connecticut, and Maryland for payment of the past due Invoices—confesses that Plaintiffs would not have filed the instant suit but for the demands for payment made by BLG to the Insurance Companies in Minnesota, Connecticut, and Maryland beginning on August 19, 2024. Doc. 24-1, ¶¶ 5-8. Burns Declaration in and of itself exemplifies that the instant suit was filed in "bad faith" in an attempt to "race to the courthouse." *See Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1004-1005 (8th Cir. 1993).

So, where is the connection to Missouri? Neither Plaintiffs, Defendants, nor the Insurance Companies are residents and citizens of Missouri. Defendants performed legal work and services in Texas, Georgia and other States, with no substantial legal work performed by Defendants in Missouri. The Retainer Agreement was negotiated and executed in Texas and Florida. The Invoices at issue were prepared in Texas and delivered by BLG from Texas to the Insurance Companies and Plaintiffs in Minnesota, Connecticut, Maryland, and Florida. The State Action arises out of events occurring in Georgia and statements published by Plaintiffs in Florida. Freeman and Moss, Plaintiffs in the State Action, reside in Georgia. The only connection to Missouri is that Plaintiffs' legal counsel, Burns, is licensed as an attorney in Missouri. Burns' legal license in Missouri is insufficient to establish jurisdiction over Defendants, and insufficient to

establish proper venue in this Court.

For these reasons, and for the reasons urged in Defendants' Motion to Dismiss (Doc. 19) and Memorandum in Support of Defendants' Motion to Dismiss (Doc. 23), this Court should deny Plaintiffs' TRO and dismiss Plaintiffs' First Amended Complaint for lack of jurisdiction and/or improper venue, or, alternatively, transfer this suit to the Eastern District of Texas—Sherman Division.

## ARGUMENT

### A. Plaintiffs acted in bad faith and raced to the courthouse to preempt BLG's lawsuit in Texas, thus, triggering the "compelling circumstances" exception to the first-filed rule.

Plaintiffs' Reply (Doc. 24) relies heavily on the Eighth Circuit decision in *Northwest Airlines v. American Airlines*, 989 F.2d 1002 (8th Cir. 1993) to argue for the application of the "first-filed rule." Plaintiffs, however, overlook the exception to the rule when a party acts in "bad faith" or "races to the courthouse," or when there are "compelling circumstances," preempting the rule. *Northwest,* 989 F.2d at 1006-1007. The Eighth Circuit, however, held that "[t]he rule, however, yields to the interest of justice, and will not be applied where the court finds 'compelling circumstances' supporting its abrogation." *Northwest,* 989 F.2d at 1006, *citing*, *United States Fire Insurance Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990). The Eighth Circuit recognized "two factors" which "send up red flags that there may be compelling circumstances." *Northwest,* 989 F.2d at 1006. First, Plaintiffs were on notice that Defendants were considering taking legal action against them for a breach of the Retainer Agreement and against the Insurance Companies for breaches of the Insurance Policy, as a result of the Insurance Companies' failure to pay the past due Invoices to BLG. And, second, Plaintiffs filed the instant suit on September 27, 2024, as a "preemptive strike" directed at BLG's prior notices to the

6

Insurance Companies concerning their failure to pay the past due Invoices. *Northwest,* 989 F.2d at 1007. The Burns Declaration affirms these two factors in the affirmative and, thus, Burns' own testimony establishes compelling circumstances supporting abrogation of the first-filed rule. *Northwest*, 989 F.2d at 1006.

BLG submitted the Invoices to the Insurance Companies for payment in connection with the State Action, which Plaintiffs received notice of as far back as March 12, 2024. Doc. 21-1, Ex. 2; Doc. 23-1, ¶¶ 34-36, 55-62. Plaintiffs knew BLG's legal position would be that the Insurance Companies were obligated to pay the past due Invoices to BLG from the Insurance Policy funds. *Id*.; Doc. 21-1, ¶¶ 11-34. Plaintiffs agreed and admitted that payment of BLG's Invoices would "reduce the amount of money that the insurer could pay towards a settlement or judgment, if any, thereby increasing the financial exposure to Plaintiffs." Doc. 1, ¶¶ 11-13.

Beginning no later than August 19, 2024, BLG made multiple written demands to the Insurance Companies for immediate payment of the past due Invoices, including a written demand made to the Insurance Companies on September 27, 2024, at 9:58 a.m., the same day on which Plaintiffs filed their Original Complaint. Doc. 1; Doc. 21-1, ¶¶ 23-34. Plaintiffs received copies of the written demands sent to the Insurance Companies and Defendants received no complaints or grievances regarding the Invoices prior to being sued by Plaintiffs on September 27, 2024. *Id.*

Burns testified that Plaintiffs negotiated a "settlement" of the State Action using "insurance proceeds" from the Insurance Policy and "[h]ad the settlement fallen apart it would have been financially devastating for Plaintiffs. Yet, Bundren demanded that he be paid first" from the Insurance Policy proceeds. Doc. 24-1, ¶ 5. Plaintiffs were on notice of the legal demands for payment of past due Invoices made to the Insurance Companies by BLG, which Plaintiffs contend would "interfere with the settlement" and trigger a "life-or-death situation for TGP." Doc. 24-1, ¶

7. Plaintiffs contend by way of the Burns Declaration that BLG's written legal demands for payment of the past due Invoices to the Insurance Companies would "interfere with the settlement" and that "TGP" had "no choice but to file this lawsuit," and that "[i]n order to comply with the settlement, TGP filed this suit on September 27, 2024 to ensure the funds were properly directed." Doc. 24-1, ¶¶ 6-8.

Plaintiffs have admitted in their pleadings and in the Burns Declaration that Plaintiffs acted in "bad faith" and engaged in a "preemptive strike" race to the courthouse to preempt the imminent legal action by Defendants in Texas, which would "interfere with the settlement" of the State Action thus triggering the "compelling circumstances" requiring abrogation of the first-filed rule. The rule "is not intended to be rigid, mechanical or inflexible" "but to be applied in a manner best serving the interest of justice." *United States Fire Insurance Co.*, 920 F.2d at 488-498, *citing, Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 169, 174 (11th Cir. 1982). Eight Circuit "courts are leery of the first-filed suits for declaratory judgment which may be more indicative of a preemptive strike than a suit for damages or equitable relief" and this is especially so when "the first-filed suit was initiated after notice the other party was planning to sue" such that "courts are suspicious of a potential race to the courthouse that often indicates disfavored forum shopping." *SL EC, LLC v. Ashley Energy, LLC*, 2019 U.S. Dist. LEXIS 220880 *8-9 (8th Cir. 2019), *citing, Anheuser-Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417, 419 (8th Cir. 1999).

In this case, it is clear that Plaintiffs filed the instant suit in a "race to the courthouse" "in an attempt to preempt the natural plaintiff [Defendants] from his or her choice of forum." *Munlake Contractors, Inc. v. Brantley Devs., L.L.C.*, No. 4:10-CV-1109-DGK, 2011 WL 4025732, at *3 (W.D. Mo. Sept. 12, 2011), *citing Clockwork Home Servs., Inc. v. Robinson*, 423 F.Supp.2d 1984,

1992 (E.D. Mo. 2006).[3]

For these reasons, irrespective of the lack of "concurrent" personal jurisdiction over Defendants and Plaintiffs' filing of this action in an improper venue, this Court should find compelling circumstances which abrogates the first-filed rule and deny Plaintiffs' TRO Motion.

**B.** **There is neither "concurrent jurisdiction" nor proper venue in this Court and Plaintiffs' arguments suggesting this Court has personal jurisdiction over Defendants and that venue is proper in this District are erroneous. (Doc. 24 at 6-10).**

In order for the "first-filed rule" to apply this Court must first determine that there is "concurrent jurisdiction" between this case and the Eastern District of Texas Litigation, and that venue is proper in this forum.[4] "Concurrent jurisdiction" and proper venue are threshold requirements before applying the first-filed rule. *Orthmann,* 765 F.2d at 121. In *Orthmann,* the Eighth Circuit held that the first-filed lawsuit should be dismissed because of the "federal comity doctrine" since the parties "vigorously dispute whether there is personal jurisdiction over the defendants" in the first-filed case. *Orthmann,* 765 F.2d at 121.

Plaintiffs misconstrue the legal authorities cited in Plaintiffs' Reply regarding jurisdiction and venue. Instead of analyzing the facts of the legal authorities relied on by Plaintiffs, Plaintiffs merely quote phrases from the legal authorities, but upon analysis, Plaintiffs' reliance is misplaced.

For instance, Plaintiffs' reliance on *Western Thrift & Loan Corp. v. Rucci* (Doc. 24 at 6) to suggest that this Court has personal jurisdiction over Defendants in Missouri is misplaced because Plaintiffs' claims against Defendants arise out of a billing dispute regarding the Retainer

---

[3]     Plaintiffs' reliance on *Martin v. Graybar Electric Co.*, 266 F.2d 202, 203 (7th Cir. 1959) is misplaced because in that case the "two actions" were "between the same parties involving identical issues." Joe Hoft and the Insurance Companies are not parties to instant case, and the Eastern District of Texas Litigation involves a breach of the Insurance Policy and injunctive relief against the Insurance Companies.
[4]     There is no "concurrent jurisdiction" and venue is improper for the reasons argued in Defendants' Motion to Dismiss, which argument and authorities Defendants incorporate herein. *See* Docs. 19 and 23, and 23-1 through 23-28.

Agreement for work performed primarily in Texas. *Western Thrift* involved a malpractice case filed in Minnesota against an attorney for permitting a default judgment to be taken against the attorney's client in a case pending in Minnesota (the "R&D Litigation"). The attorney's malpractice occurred in Minnesota with respect to the R&D Litigation. *W. Thrift & Loan Corp. v. Rucci*, No. CIV. 11-3644 JNE/TNL, 2012 WL 1021681, at *3-4 (D. Minn. Mar. 27, 2012). The court ruled that the attorney's conduct was intimately related to Minnesota. *Id.* Those same facts, however, do not exist in this suit.

Plaintiffs do not claim any harm suffered by Plaintiffs in the State Action as a result of any conduct of Defendants occurring in Missouri. This case concerns at its core a billing dispute regarding the Invoices prepared and sent by BLG from Texas to the Insurance Companies, TGP, and the Hofts in States other than Missouri. Missouri simply has no connection to the Retainer Agreement, the Invoices, or the billing dispute. Missouri's only connection is that Plaintiffs' attorney is licensed and resides in Missouri and TGP was organized in Missouri, which TGP later abandoned and moved its principal place of business to Florida. Additionally, the Hofts are residents and citizens of Florida. Plaintiffs' Reply ignores these controlling facts.

Equally misconstrued is Plaintiffs' reliance on the Eighth Circuit decision in *Downing v. Goldman Phipps, LLC*, 764 F.3d 906 (8th Cir. 2014). In *Downing*, the dispute concerned a "settlement agreement" which the defendants negotiated in person in Missouri. The Eighth Circuit found that because each defendant traveled to Missouri on multiple occasions to negotiate a settlement agreement in-person in Missouri, defendants were deemed to have transacted business within the state of Missouri. *Downing*, 764 F.3d at 911-912. The court held that a defendant's travel to Missouri to contact, negotiate, and execute a contract with a company that has its principal place of business in Missouri is considered the "transaction of any business" in the State of

10

Missouri for purposes of the Missouri long arm statute. *Downing*, 764 F.3d at 912. But even if a party is transacting business in the State of Missouri, which Defendants here <u>did not do</u> – "[t]he question [still] remains whether the exercise of jurisdiction over the defendants would offend due process." *Id.* "To be sure, a defendant must have taken actions creating a *substantial connection* with the forum, and purposefully avail itself of the benefits and protections of the forum to anticipate reasonably being hauled into court there." *Downing*, 764 F.3d at 912, *citing, World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980); *see also Burger King Corp. v. Rudz*ewicz, 471 U.S. 462, 474-76 (1985). The Eighth Circuit noted that it is the burden of the plaintiff to make out a prima facie case showing that the defendant transacted business in the forum state that is connected to the dispute. *Downing*, 764 F.3d at 912. And, according to the Eighth Circuit, to meet the due process minimum, the court must determine a defendant's contacts by examining "1) nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action (the billing dispute) to the contacts; 4) the interest of the forum state in providing a forum for its *residents;* and 5) the convenience of the parties. *Downing*, 764 F.3d at 912, *citing, Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008).

Here, it is undisputed that Defendants did not travel to Missouri nor engage in any solicitation in Missouri to contact Plaintiffs in order to be retained to provide legal representation. Doc. 23-1, ¶¶ 24-28. The Retainer Agreement in dispute was not negotiated in Missouri and Defendants did not travel to Missouri to negotiate the Retainer Agreement. *Id.,* ¶¶ 27-30. Thus, at the outset, based on the holding of *Downing,* Defendants did not "transact" any business in the State of Missouri in connection with the Retainer Agreement, which is at the heart of the billing dispute in this case. Plaintiffs' Reply fails to even provide an analysis of whether Missouri's long arm statute applied. That is because Defendants did not engage in any "substantial" actions in

11

Missouri related to the negotiation, execution, or solicitation of the Retainer Agreement. *Id*. Plaintiffs are residents and citizens of Florida. *Id*. at ¶¶ 18-23. The Insurance Companies who issued the Insurance Policy are not residents of Missouri. *Id*. at ¶¶ 32-36, 46-50. The conduct of Defendants which Plaintiffs complain of in their First Amended Complaint all occurred in the State of Texas, not Missouri. *Id*., ¶¶ 37, 39-45, 51-54, 140.

The other legal authorities cited by Plaintiffs to establish personal jurisdiction and proper venue are distinguishable on their facts. The case of *Minnesota Mining & Mfg. Co. v. Rynne* has no applicability to the "personal jurisdiction" question here before the Court. *Minnesota Mining & Mfg. Co. v. Rynne*, 661 F.2d 722 (8th Cir. 1981). And, Plaintiffs' suggestion that *Creative Compounds, LLC v. Lott & Friedland, P.A.*, establishes "specific jurisdiction" over Defendants in Missouri is troubling.

In that case, the law firm agreed to represent Creative on all of Creative's "patent-related matters" including "19 individual matters." *See Creative Compounds, LLC v. Lott & Friedland, P.A.*, No. 1:10CV000025 SNLJ, 2010 WL 1854058, at *2 (E.D. Mo. May 7, 2010). Creative sued the law firm in Missouri for "failing to timely filed a patent application." *Id*. at *1. The court held that law firm's "representation of Creative in the *patent infringement case* was sufficiently related to its representation of Creative in *seeking patent protection* so that the contacts established in the *patent infringement case* can indeed be properly *bootstrapped to*" the law firm's "representation of *Creative altogether*." *Id.* at *3. The court concluded that "although it is a close call…the representation was all related and that the bootstrapped is now warranted." *Id.* at *4. "And even though the patent infringement case and the patent application request involved separate legal matters, they were both part of the parties' overall understanding that [the law firm] would represent Creative on all of its patent law needs." *Id.* (emphasis added). Those facts do not exist

12

here.

Plaintiffs' other arguments in Plaintiffs' Reply (Doc. 24 at 10-16) are either inapplicable

to Plaintiffs' TRO Motion (Doc. 11), or were not raised in Plaintiffs' TRO Motion, and,

consequently, are improperly asserted in a reply.

For these reasons, Plaintiffs' TRO Motion should be denied.

Dated: November 11, 2024                      Respectfully submitted,

                                              JENKINS & KLING, P.C.

                                              By: /s/ *Liam R. Brannon*
                                                  Liam R. Brannon, #73640MO
                                                  Katherine I. McLaughlin, #69734MO
                                                  150 N. Meramec Ave., Suite 400
                                                  St. Louis, Missouri 63105
                                                  (314) 721-2525 Phone
                                                  (314) 721-5525 Fax
                                                  lbrannon@jenkinskling.com
                                                  kmclaughlin@jenkinskling.com
                                                  *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 11, 2024, the foregoing was filed electronically to be served to all counsel of record by operation of the Court's electronic filing system.

<em>/s/ Liam R. Brannon</em>